UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LT TECH, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:13-cv-1901-M |
| | § | |
| FRONTRANGE SOLUTIONS USA INC., | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION & ORDER**

Before the Court is the Motion to Transfer Venue, filed by Defendant FrontRange Solutions USA Inc. ("FrontRange") [Docket Entry #18]. For the reasons set forth below, the Motion is **GRANTED**.

I.   BACKGROUND

Plaintiff LT Tech, LLC ("LTT") filed this action against FrontRange, alleging infringement of United States Patent No. 6,177,932 ("the '932 patent") entitled "Method and Apparatus for Network Based Customer Service", which was assigned to LTT roughly four months before this suit was filed. LTT maintains that FrontRange infringed the '932 patent directly, contributorily, and by inducement, through the production and sale of its Help Desk products. FrontRange asserts affirmative defenses and counterclaims that Help Desk does not infringe the '932 patent, and that the '932 patent is invalid.

LTT is a Texas limited liability company. It apparently has a single employee, Matthew DelGiorno, one of its counsel of record, and its record address appears to be Mr. DelGiorno's apartment. FrontRange is a corporation organized under Colorado law, with its principal place of business in Milpitas, California, and another facility in Colorado Springs, Colorado. FrontRange

has filed a motion seeking transfer to the Northern District of California under 28 U.S.C. § 1404(a).

## II.   LEGAL STANDARD

A.   § 1391 Standard

Venue is proper in a judicial district in which any defendant resides if all defendants are residents of the state where that district is located, or in a district where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). If no district meets these criteria, the action may be brought in any district where a defendant is subject to the court's personal jurisdiction with respect to the action. *Id.*

B.   § 1404(a) Standard

The Court may, "[f]or the convenience of the parties and witnesses" and in "the interest of justice," transfer the case to any district in which the case could have been brought under 28 U.S.C. § 1391. 28 U.S.C. § 1404(a). In deciding whether to transfer, the Court has "broad discretion[.]" *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). However, the Fifth Circuit requires courts to consider a variety of private and public interest factors in making the transfer decision. *Action Indus., Inc. v. U.S. Fid. & Guar. Co.,* 358 F.3d 337, 340 (5th Cir. 2004); *see also City of Clinton, Ark. v. Pilgrim's Pride Corp.,* No. 4:09–CV–386–Y, 2009 WL 4884430, at *2 (N.D. Tex. Dec. 17, 2009) (Means, J.). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: "(1) the administrative difficulties flowing

from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* Fifth Circuit precedent clarifies that the plaintiff's choice of venue is not a distinct factor in the § 1404(a) analysis, but "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 314-15.

### III.   DISCUSSION

A.   Proper venue under § 1391

As an initial matter, the Court must determine whether this case could properly be brought in the proposed alternative venue under § 1391. LTT does not dispute that because FrontRange has its principal place of business in the Northern District of California, venue would be proper in that district. 28 U.S.C. § 1391(b)(1); Pl.'s Opp. 2 n.1.

B.   Private Interest Factors

1.   The relative ease of access to sources of proof

Due to increasing technological advances, access to some types of proof presents a lesser inconvenience than it once did; however, the fact that technology reduces the inconvenience does not render this factor superfluous. *Volkswagen II*, 545 F.3d at 315; *Comcast Cable Commc'ns, LLC v. British Telecomms. PLC*, No. 3:12-CV-1712-M, 2012 WL 6625359, at *3 (N.D. Tex. Dec. 20, 2012) (Lynn, J.). To that end, courts in the Fifth Circuit are generally not to consider that the parties' documents are stored electronically as a basis to minimize the significance of the documents' location in a 1404(a) analysis. In *Volkswagen II*, the Fifth Circuit held that a district court improperly "read[] the sources of proof requirement out of the § 1404(a) analysis" when it ruled that "the relative access to sources proof [wa]s neutral because of advances in copying

technology and information sources." 545 F.3d at 316. In *Volkswagen II*, because "all of the documents and physical evidence . . . [were] located in" the potential transferee forum, the Fifth Circuit found that the factor weighed in favor of transfer. *Id.* Further, this factor is particularly significant in the context of patent infringement cases because, in general, the majority of the relevant evidence in such cases comes from the accused infringer. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Therefore, the location of the alleged infringer's documents bears heavily on the Court's determinations with respect to this factor.

      FrontRange submitted evidence that its physical documents and files relating to the Help Desk products, as well as its servers and the master versions of FrontRange's software, are primarily located in its Milpitas offices, with the remaining sources of proof located in its Colorado Springs offices. Wolff Decl. ¶ 8. FrontRange also submitted evidence that the physical files relating to its legal and finance departments, and to the sales and marketing of Help Desk products, are also in the Milpitas office. Wolff Decl. ¶ 9. FrontRange also offers evidence that the files of the law firms that prosecuted the '932 patent are located in Palo Alto, California and Los Angeles, California, and that relevant prior art to be used in its invalidity defense, such as the product "pcAnywhere", is produced by companies headquartered in the Northern District of California where their files presumably are located. Craig Decl. Exs. 7-8.

      In response, LTT presents evidence that the following documents are located in Texas: (1) LTT's documents, the contents of which it does not specify and so does not establish their relevance; (2) unspecified documents of Gemini IP, LLC, which owned the '932 patent for more than five years; and (3) the documents of Baylor University and the City of Fort Worth, "users of Front[R]ange products[.]" DelGiorno Decl. ¶¶ 5, 8-11. LTT also notes that FrontRange has two employees in Lubbock, which is in the Northern District of Texas: a sales engineer and a

customer support manager. Wolff Dec. ¶ 6. Although LTT argues that these employees' documents are relevant to its infringement claims, it does not explain why. LTT's failure to detail its and Gemini's documents, and their relevance, does not advance its position. *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, No. CIV.A. 309-CV-0488-D, 2009 WL 2634860 (N.D. Tex. Aug. 26, 2009) (Fitzwater, C.J.) (finding that this factor weighed in favor of transfer where plaintiff did not "identify[ ] the documents, even by general nature or type, or specify[ ] other sources of proof" that it asserted were located at its headquarters). Moreover, while the City of Fort Worth and Baylor University may use Help Desk products, so do many other FrontRange customers across the country, including some in the Northern District of California, mitigating the need for documents from customers located in the Northern District of Texas. *Id*. (noting that where an allegedly infringing product is sold nationwide, sources of proof from customers are equally available across districts). Finally, while FrontRange has two employees in Lubbock, Texas,[1] neither of them were involved in the creation or development of the Help Desk products, nor does their work focus in any meaningful way on those products, and thus this location has little, if anything, to do with the proper venue for this case.

While LTT correctly notes that FrontRange does not specify the percentage of FrontRange documents in Milpitas, FrontRange said "most" of its relevant documents were there. The documents FrontRange identified as being located in Milpitas seem more relevant to the case than do the documents LTT claims are located in the Northern District of Texas, because the documents specified by FrontRange concern the design and marketing of the Help Desk products, while the only seemingly relevant documents in the Northern District of Texas relate to use of the Help Desk products by one customer in the Fort Worth Division. *See*

---

[1] Lubbock is approximately 350 miles from Dallas and is in the Lubbock Division of the Northern District of Texas.

*generally In re Genentech*, 566 F.3d at 1345. Finally, although Colorado Springs is closer to the Northern District of Texas than to the Northern District of California, neither party has identified particularly relevant documents there. Considering the proof before the Court, this factor weighs in favor of transfer. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (sources of proof factor favored transfer when it appeared that a significant portion of the evidence would be located in the proposed transferee district).

      2.      The availability of compulsory process to secure the attendance of witnesses

A party seeking a transfer must "identify the key witnesses and the general content of their testimony." *Sargent v. Sun Trust Bank, N.A.,* No. Civ.A. 3:03-CV-2701, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quotation omitted). "The party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover." 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851, at 221-22 (3d ed. 2007). When a greater number of key non-party witnesses could be subpoenaed to attend a trial in the potential transferee forum, but not in the current forum, this factor favors transfer. *Internet Machines LLC v. Alienware Corp.*, No. 6:10–cv–023, 2011 WL 2292961, at *6 (E.D. Tex. June 7, 2011) (citing *In re Hoffman–La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009)). Under Federal Rule of Civil Procedure 45, a district court may subpoena a nonparty witness if he or she lives within the district or "within 100 miles of the place specified for the deposition, hearing, trial . . . ." Fed. R. Civ. P. 45(b)(2). But under Rule 45(c)(3)(A)(ii), the court must quash or modify a subpoena compelling a person who is neither a party nor a party officer to travel more than 100 miles to testify. *AT & T*, 2009 WL 774350, at *4.

FrontRange stated its intention to call as a witness Frank Galdes, the lead inventor of the

'932 patent, on its defenses, including invalidity and prosecution history estoppel. Def.'s Br. 9. Mr. Galdes works in Pleasanton, California, which is within the Northern District of California. The Court presumes he resides within that district or within 100 miles of the courthouse, making him subject to compulsory process in that district and outside the subpoena power of the Northern District of Texas. Craig Decl. Ex. 4. FrontRange identified other non-party witnesses who would be outside the subpoena power of the Northern District of Texas, but subject to compulsory process in the Northern District of California: (1) former employees of FrontRange, who Defendant asserts can testify as to the development, design, and marketing of the accused Help Desk products; (2) the attorneys from Stattler, Johansen & Adeli LLP of Palo Alto, who prosecuted the '932 patent, and who Defendant maintains can provide testimony relevant to claim construction and inequitable conduct; (3) employees of Kana Communications, the original assignee of the '932 patent, which is located in Sunnyvale, California; and (4) creators of pcAnywhere, alleged prior art manufactured by Symantec, which is headquartered in Mountain View, California. Craig Decl. Exs. 3-8. LTT notes that FrontRange did not specifically identify its former employees involved in the development, design, or marketing of its Help Desk products, making it impossible for the Court to determine whether such witnesses would be subject to compulsory process in either venue.

      LTT also urges that the Northern District of Texas has subpoena power over: (1) the unnamed principal of Gemini IP, LLC, the prior owner of the '932 patent, who LTT asserts has knowledge of prior licenses and resides in Dallas, Texas; and (2) employees of Baylor University in Waco, Texas, and the City of Fort Worth, Texas, who LTT asserts have knowledge of FrontRange's alleged inducement to infringe. DelGiorno Decl. ¶¶ 8-11, 13. LTT does not specifically identify such employees, but the Court will assume the evidence would come from

current employees who are subject to subpoena in the Northern District of Texas. However, given that FrontRange's Help Desk products are sold nationwide, Baylor University and the City of Fort Worth are not unique in having knowledge of FrontRange's alleged inducement to infringe. Accordingly the fact that these customers are subject to compulsory process in this district is of only minor importance. LTT does not specify the relevance of testimony of the unnamed principal of Gemini IP, LLC, the prior owner of the '932 patent, although testimony of prior licenses is presumably relevant to damages. Since licenses are presumably written, the court cannot conclude that the prior patent owner has unique testimony that cannot be given by other FrontRange witnesses.

LTT presents evidence that Hershkovitz & Associates, PLLC, which prosecuted the reexamination of the '932 patent, is located in Alexandria, Virginia, and thus outside the subpoena power of either Texas or California. DelGiorno Decl. ¶¶ 14-15. Similarly, Mark Ericson, a named inventor of the '932 patent, is in New Hampshire and outside the subpoena power of both courts. Craig Decl. ¶ 5. LTT has not identified relevant witnesses who are subject to compulsory process in the Northern District of Texas but not in the Northern District of California. FrontRange has identified a significant number of relevant witnesses subject to compulsory process in the transferee forum, but not in this district. Therefore, this factor weighs in favor of transfer.

  3.  The cost of attendance for willing witnesses

While both parties argue that the distance and expense for their party witnesses would be prohibitive in the event the case takes place outside of their preferred forums, "[t]his factor primarily concerns the convenience of nonparty witnesses." *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.,* No. 3:10–CV–2466–D, 2011 WL 1103372, at *4 (N.D. Tex.

Mar. 25, 2011) (Fitzwater, C.J.) (declining to consider the parties' employees under this factor). The convenience of party witnesses is entitled to less weight because the parties can compel their employees' testimony at trial. *Comcast Cable Commc'ns, LLC*, 2012 WL 6625359, at *5; *Ternium Int'l U.S.A. Corp. v. Consol. Sys., Inc.*, No. 3:08–cv–816–G, 2009 WL 464953, at *4 (N.D. Tex. Feb. 24, 2009) (Fish, J.). However, the Court must still consider the convenience of both the party and non-party witnesses. *Volkswagen I*, 371 F.3d at 204.

In addition to non-party witnesses subject to subpoena in the Northern District of California, FrontRange argues that attorneys from the Los Angeles firm of Blakely, Sokoloff, Taylor, & Zafman, could travel to the Northern District of California much more economically than they could travel to the Northern District of Texas, and with substantially less inconvenience to them. Craig Decl., Ex. 7. LTT identified potential witnesses in Virginia and New Hampshire which are closer to the Northern District of Texas than to the Northern District of California, but both involve considerable travel and likely only three more hours of air travel each way, which the Court finds is not significant in the context of all the witnesses. DelGiorno Decl. ¶¶ 14-15; Craig Decl. ¶ 5. The Court concludes that for the majority of third-party witnesses identified by the parties, the cost of their attendance at trial is less if the trial were held in California.

FrontRange contends that a trial in Texas would require many of its employees to attend, thus disrupting its business operations. In contrast, LTT has no active operations which will be disrupted. While such considerations weigh slightly in favor of transfer, it is the convenience of the non-party witnesses that is accorded the greatest weight. *Comcast Cable Commc'ns, LLC*, 2012 WL 6625359, at *5. This factor weighs in favor of transfer.

  4.  All other practical problems

The "existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). However, in *In re Zimmer*, 609 F.3d 1378, 1382 (Fed. Cir. 2010), the Federal Circuit held that where related patent infringement cases were "in the infancy stages of litigation" and there was only one overlapping patent and no common defendants between them, the fact that there were related cases in the same forum did not "negate[ ] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor [transfer]." Further, the recently enacted America Invents Act contemplates that each patent case will be treated separately. 35 U.S.C. § 299 (2011); *See GeoTag, Inc. v. Starbucks Corp.*, 2:10-CV-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) (holding that permitting the existence of separately filed patent cases to sway a transfer analysis would allow plaintiffs to manipulate venue by serially filling cases within a single district and "undermine the principals underpinning transfer law and the . . . America Invents Act").

Here, there are two related cases currently pending before the undersigned judge, in the Northern District of Texas, *LT Tech LLC v. TechExcel, Inc., et al.*, No. 3:13-cv-4261-M and *LT Tech LLC v. Kayako, Inc.*, No. 3:13-cv-3627-M.[2] Each case concerns alleged infringement of the '932 patent. The four defendants in *TechExcel* have their principal places of business in Lafayette, California, Charlotte, North Carolina, Santa Ana, California, and San Jose, California respectively. Kayako, Inc. has its principal place of business in Boise, Idaho. No scheduling order has been issued in *TechExcel* or *Kayako*, nor have the parties yet filed responses to the Complaints.

---

[2] A third case referenced in the parties' briefs, *LT Tech, LLC v. Sysaid Technologies Ltd., et al.*, No. 3:13-cv-2754-M (Lynn, J.), has since been dismissed with prejudice pursuant to a motion from LTT, and is thus not at issue here.

LTT argues that in light of these related cases, a transfer of the present case would result in a duplication of efforts, frustrating the interests of judicial economy. FrontRange responds that since, as in *Zimmer*, each case has only one overlapping patent with no common defendants, involves different allegedly infringing software, and is at a very early stage, concerns for judicial economy are unwarranted. In light of the America Invents Act's mandate to adjudicate patent suits independently, LTT's argument about gains in judicial efficiency is unavailing. *GeoTag*, 2013 WL 890484 at *6 (holding that under the America Invents Act, related patent cases were not relevant to the transfer analysis where such cases were in their infancy and plaintiff had "not pointed to any 'common issues' that would not be present in all infringement cases" generally, such as claim construction). "The preferred forum is that which is the center of gravity of the accused activity" and "the trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Paragon Indus., L.P. v. Denver Glass Machinery, Inc.*, 2008 WL 3890495, *3 (N.D. Tex. Aug. 22, 2008) (Lynn, J.) (quoting *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, 2003 WL 21251684, *2 (N.D. Tex. May 23, 2003)). That forum is the Northern District of California.

C.   Public Interest Factors

    1.   The administrative difficulties flowing from court congestion

FrontRange argues that because the Northern District of California has more judges handling fewer cases than does the Northern District of Texas, this factor favors transfer. "But when considering this factor, 'the real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'" *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, No. 3:10-CV-2466-D, 2011 WL 1103372, at *5 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (internal citations

omitted). Both parties cite to federal caseload statistics in support of their positions. According to the most recent statistics, this district's median time interval from filing to disposition for civil cases is approximately 6.7 months, and that of the Northern District of California is approximately 6.6 months. United States District Courts – National Judicial Caseload Profile (June 2013), 34, 66. Also, this district's median time interval from filing to trial for civil cases is 25 months, while that of the Northern District of California is 30.9 months. These statistics do not delineate the median time interval from filing to disposition or trial for patent cases specifically. Given the similarity of the statistics for each district, and that patent cases have special rules and procedures that make general statistics less useful to this analysis, this factor is neutral. *See Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, No. 3:09-CV-0488-D, 2009 WL 2634860, at *6 (N.D. Tex. Aug. 26, 2009) (Fitzwater, C.J.) (finding that this factor was neutral where the caseload statistics referenced by the parties referred to civil cases generally rather than patent cases specifically); *On Semiconductor Corp. v. Hynix Semiconductor, Inc.,* 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010) (reaching the same conclusion where the difference between the two districts' time to trial was five months).

   2.  The local interest in having localized interests decided at home

  The Court's analysis of the public interest factors is primarily directed to the second factor: the local interest in having localized interests decided at home. *Comcast Cable Commc'ns, LLC*, 2012 WL 6625359, at *5; *Volkswagen II,* 545 F.3d at 315. It is well-established that the local interest in deciding local issues at home favors transfer to a venue that will vindicate such an interest. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981).

  In support of its position, LTT emphasizes that it is based in Allen, Texas, that its "good faith outreach to opening licensing discussions" with FrontRange originated from Texas, and that

the prior owner of the patent-in-suit is a Texas company. DelGiorno Decl. ¶ 7-9. While the residents of the Northern District of Texas have an interest in the activities of companies within that district, an attempt to open licensing discussions is of minimal relevance, and LTT has not satisfactorily explained the significance of the residence of the prior assignee of the '932 patent to its claims. Moreover, FrontRange presents evidence that LTT has only one employee, its attorney of record, Matthew DelGiorno, who has the same address as LTT's headquarters, an apartment at the Hidden Creek Apartments in Allen, Texas. Craig Decl. Exs. 1-3. LTT has been in existence for less than one year, and has not identified any employees in this district aside from Mr. DelGiorno, nor has it averred that it provides any goods or services to residents in this district. Craig Decl. Ex. 1; DelGiorno Decl. ¶ 4-6. In contrast, FrontRange is headquartered in the Northern District of California, and while it does not specify the exact number of its employees located in that distract, it does present evidence that the majority of its executives and employees are within that district, including the team that developed the FrontRange Help Desk products. Wolff Decl. ¶ 7.

Nonetheless, LTT argues that the residents of the Northern District of Texas have a greater interest in the case because FrontRange sells the allegedly infringing products in this district and conducts "user groups"[3] in Texas. DelGiorno Decl. ¶ 18. In *In re TS Tech USA Corp.,* the Federal Circuit, in deciding a motion to transfer venue in a patent case, found that the mere sale of allegedly infringing products in the original forum did not give that forum a "substantial interest" in having the case decided locally. 551 F.3d 1315, 1321 (Fed. Cir. 2008). Pointedly, the Federal Circuit noted that, because the sale of infringing products in the forum "could apply virtually to any judicial district or division in the United States," to rely on that as a

---

[3] Neither party explains what a "user group" is, but presumably they are test or promotional events for FrontRange products.

basis to find that the district had a localized interest in the controversy "stretche[d] logic." *Id.* (quoting *Volkswagen II*, 545 F.3d at 318). Therefore, the residents of the Northern District of Texas do not have a substantial local interest in this case merely because allegedly infringing products were sold within the district. *AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.,* No. CIV.A. 3:08-CV-1637, 2009 WL 774350, at *6 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (holding that this factor favored transfer where the alleged infringer was based in the transferee district and "most, if not all of its witnesses, evidence, and business operations are there" despite the fact that the allegedly infringing products were sold in the Northern District of Texas). Accordingly, because FrontRange's Help Desk products were designed and developed in California and are marketed and supported by a company headquartered in and with a significant number of executives and employees based in California, this factor favors transfer.

3. The familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws or in the application of foreign law

The parties agree that, because this matter arises under federal patent law, there is no potential conflict of law and both courts are equally capable of applying the law that will govern the case. These factors are thus neutral.

IV. CONCLUSION

Given that the majority of both the sources of proof and the non-party witnesses are in the Northern District of California, and since that district has a substantially greater local interest than does this district, FrontRange has carried its burden to support a transfer to that district. The Court **GRANTS** Defendant's Motion to Transfer.

**SO ORDERED**.

November 26, 2013.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS